Michael Waddington (SBN 172279)
**LAW OFFICE OF MICHAEL WADDINGTON, APC**
9615 Brighton Way, Suite 400
Beverly Hills, California 90210
Tel: 310.276.4100
Fax: 310.276.4106
Email: michael@waddington-law.com

Attorney for Plaintiff Juan Manuel Gutierrez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MANUEL GUTIERREZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC; CHAMPION MORTGAGE COMPANY; CHAMPION MORTGAGE COMPANY, dba NATIONSTAR MORTGAGE, and DOES 1-100, inclusive<br><br>Defendants. | Case No. 5:18-cv-02035-JAK-SP<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE UNSIGNED SETTLEMENT AGREEMENT**<br><br>[Filed concurrently with Declarations of Michael Waddington] |

**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE UNSIGNED SETTLEMENT AGREEMENT**

## Table of Contents

|   |                  | Page |
|---|------------------|------|
| 1. | THE FACTS ..................................................................... | 1 |
| 2. | LEGAL AUTHORITY................................................... | 5 |
| 3. | CONCLUSION ............................................................... | 7 |

**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE
UNSIGNED SETTLEMENT AGREEMENT**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In Re City Equities Anaheim, Ltd.*,
   22 F.3d 954 (9th Cir. 1984) .................................................................. 6

*Doi v. Halekulani Corp.*,
   276 F.3d 1131 (9th Cir. 2002) .............................................................. 6

*Gavina v. Smith*,
   25 Cal.2d 501 (1944) ............................................................................ 6

*Harrop v. Western Airlines, Inc.*,
   550 F.2d 1143 (9th Cir. 1977) .............................................................. 5

*Jeff D. v. Andrus*,
   899 F.2d 753 (9th Cir. 1989) ................................................................ 6

*Maynard v. City of San Jose*,
   37 F.3d 1396 (9th Cir. 1977) ................................................................ 5

*United States v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) ................................................................ 7

*Speed Shore Corp. v. Denda*,
   605 F.2d 469 (9th Cir. 1979) ................................................................ 6

*TNT Marketing, Inc. v. Agresti*,
   796 F.2d 276 (9th Cir. 1986) ................................................................ 6

**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE UNSIGNED SETTLEMENT AGREEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. THE FACTS.

In its Motion to Enforce, Nationstar did exactly what it did in its Motion for Summary Judgment: In telling the facts, Nationstar told the truth, but just not the whole truth.

The following facts are true:

### I. Introduction.

Pursuant to the court's orders setting a settlement conference, ECF Nos. 40 and 52, Nationstar sent plaintiff a settlement offer on July 17, 2020. Ex. B. Plaintiff did not initially accept the offer, and the settlement conference concluded without a settlement. Decl. of Natalie L. Winslow at ¶¶ 2-3. In December 2020, plaintiff inquired whether Nationstar would agree to settle the case on the same terms as the July 17, 2020 offer. Id. at ¶ 4. On December 23, 2020, Nationstar informed plaintiff, "Champion's prior offer still stands. . . ." Ex. C. On January 5, 2021, pursuant to plaintiff's request, Nationstar added a term to the pending offer.

But that's not the whole truth of *all* the communication between counsel of Plaintiff Gutierrez, Michael Waddington ("Waddington"), and counsel for Nationstar, Natalie Winslow ("Winslow") that transpired on December 23, 2020, or the communication from December 23, 2020 to January 5, 2021.

On December 23, 2020, at 2:55 pm, Waddington emailed Winslow:

> Would you mind sending me the Release **EVEN THOUGH I DON'T HAVE AUTHORITY**? Please. It would help tremendously." (Emphasis *original*.)

Decl. of Michael Waddington at ¶ 2; NATIONSTAR EXHIBIT C (FILED UNDER SEAL)[1]

---

[1] As all the email exchanges referred to in Plaintiff's Motion are within Exhibit C of the exhibits which Nationstar has applied for and been granted leave to file under seal, Plaintiff will refer to Nationstar's Exhibit C hereinafter.

1

**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE
UNSIGNED SETTLEMENT AGREEMENT**

At 5:08 pm, Winslow responded to (and denied) Waddington's request:

> **My client isn't going to authorize me to prepare a settlement agreement if the parties haven't settled.** I can send over some same release language (not a full blown settlement agreement) if that would be helpful. Generally I would include a release paragraph as part of the settlement agreement which really just releases my client from the pending and current litigation, and any claims that could have been brought in the litigation or regarding the property, note, deed of trust, etc. **Should our clients ultimately settle, my client will have to sign off on any release language before it's included as part of the agreement.** (Decl. of Michael Waddington at ¶ 3; Nationstar's Ex. C, emphasis added.)

At 5:30 pm, Waddington responded:

> send over anything you can, please.
>
> I knew it was a lot to ask, if the chances were slim, just because, **but I was hopeful that it wouldn't be too much of a burden so that I could have the document in hand when I went out and talk to him and perhaps he would sign it when I was there. That was the purpose in my asking.** But I understand your clients position. (Decl. of Michael Waddington at ¶ 4; Nationstar's Exhibit C, emphasis added.)

On Thursday, December 31, 2020 at 12:12 PM, Waddington wrote Winslow:

> In my campaign to resolve this dispute, it would be helpful to know if Juan would be given the settlement funds from the insurance company from the fire, and, if so, the amount.
>
> **I am trying to figure out how much it would cost to bring the house up to code, and ANY money would be helpful, because ▮▮▮▮ isn't going to cut it.**
>
> **Juan's can't figure out how it would benefit him to accept the offer when he still couldn't live in the home, not to mention the litigation with the City and State.** Which reminds me, they published, and I need to respond on or before the 4th. As this litigation is as unfamiliar to me as litigating against a mortgage company, I would be grateful if you could share Nationstar's response. (Decl. of Waddington, at ¶ 5.)

2

**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE
UNSIGNED SETTLEMENT AGREEMENT**

As Nationstar truthfully states, "On January 5, 2021, pursuant to plaintiff's request, Nationstar added a term to the pending offer." On Saturday, January 9, 2021, Waddington met Mr. Gutierrez and his three adult children at his home. Approximately twenty (20) volunteers were also present, all of whom had come to start the process of removing all of the trash placed in Mr. Gutierrez's red-tagged home. The gentleman coordinating the volunteers had arranged for three large flatbed trucks to haul all the trash and debris away. Decl. of Michael Waddington at ¶ 6.

The impetus behind this altruistic effort was an article written by Steve Lopez that appeared on the cover of the California section of the *Los Angeles Times* on Sunday, December 20, 2020, titled, "Evicted Widower Longs To Return Home." Decl. of Michael Waddington at ¶ 7. Mr. Lopez's article discussed the "pros and cons" of reverse mortgages, using Mr. Gutierrez as an example of one of the "cons." When readers of the story reached out to help financially, a GoFundMe campaign was established; money was donated with the intention of it being used to help with the necessary repairs to allow Mr. Gutierrez to return home to his currently red-tagged home. Decl. of Michael Waddington at ¶ 8. That Saturday, January 9, 2021, Mr. Gutierrez, speaking Spanish, told his children that he would settle, who in turn told Waddington. Decl. of Michael Waddington at ¶ 9.

"On [Sunday] January 10, 2021, [Waddington notified Winslow that Mr. Gutierrez had] accepted the pending offer. Id. The following day, plaintiff and Nationstar filed with this court a notice of settlement, ECF No. 75. *(See,* Nationstar's Motion, p.1.) Fifteen (15) days later, on January 25, 2021, Waddington received the "proposed draft settlement agreement." The substantive terms were only three-and-a-

3
**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE
UNSIGNED SETTLEMENT AGREEMENT**

half (3½) pages. The "full blown settlement agreement" was a FORM DOCUMENT. (Decl. of Michael Waddington at ¶ 20; NATIONSTAR EXHIBIT A.)

Through an interpreter, Waddington again discussed/explained the terms to Mr. Gutierrez, as did his children. Decl. of Michael Waddington at ¶ 11. Mr. Gutierrez misunderstood that the source of the funds to repair his home (Nationstar vs. GoFundMe). Mr. Gutierrez understood that Nationwide was going to pay to have his home restored to the way it was "before":

> *Before* April 14, 2014, when Champion sold the home in a foreclosure sale to a third party;
>
> *Before* April 30, 2014, when he was served with a Foreclosure Notice to Quit by the purchasers in foreclosure, Cortez and Diaz;
>
> *Before* May 6, 2014, when Cortez and Diaz filed an *Unlawful Detainer Action* against him;
>
> *Before* June 11, 2014, when Champion recorded the Notice of Recission of the Foreclosure that it had filed on June 9, 2014 (and failed to inform him or the purchasers, Cortez and Diaz, that as of June 9, 2014, that he owned the home, and not Cortez and Diaz);
>
> *Before* June 13, 2014, when four (4) days after Champion Rescinded the sale, Cortez and Diaz obtained a Judgment against him;
>
> *Before* July 22, 2014, forty-three (43) days *after* Champion rescinded the sale,[2] **when Cortez and Diaz had him evicted from his home (although he was the legal owner),** making him homeless; and,
>
> *Before* Cortez and Diaz immediately undertook demolishing the home he had owned and lived in since 1968 (LBJ was President).

---

[2] **During those forty-three (43) days, Champion took no action** -- not one phone call, not one letter, not one email -- to inform Gutierrez (or Cortez or Diaz or HUD Counselor Marlon Nochez or anyone at Inland Fair Housing & Mediation Board or Attorney Elena Castillo, or anyone at Inland Counties Legal Services) of the recission.

4

**PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE
UNSIGNED SETTLEMENT AGREEMENT**

## 2. LEGAL AUTHORITY.

In its Motion to Enforce, Nationstar did exactly what it did in its Motion for Summary Judgment: In citing legal authority, Nationstar told the truth, but just not the whole truth. For example, the legal authority Nationstar cites is the truth:

> "To be enforced, a settlement agreement must only meet two criteria: (1) the settlement agreement must be complete; and (2) the parties must have agreed to terms of the settlement agreement or authorized their respective counsel to settle the dispute. *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1977); *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-1145 (9th Cir. 1977)." (See, Nationstar's Motion, p. 2.)

But it's not the whole truth. In *Maynard*, the Court declined to enforce an agreement that was negotiated during a Settlement Conference.

> "After reviewing the correspondence between the parties and hearing from the attorneys involved in the settlement agreements, the court concluded that the parties never completed the settlement agreement. Although the attorneys left the March 4 settlement conference believing they would work out the final language [...], they were not able to do so."

In *Harrop*, the terms of agreement were agreed to "on the record."

> "The terms of the agreement were recited on the record, and the transcript of the hearing demonstrates...both parties explicitly agreed to the terms."

If "the court [in *Maynard*] concluded that the parties never completed the settlement agreement," when the negotiations took place during a "settlement conference," because the parties "were not able to" "work out the final language" after leaving the "settlement conference," then Nationstar's citing *Maynard* as precedent inherently undermines its argument to enforce the settlement under *all the facts* now before this Court.

PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE
UNSIGNED SETTLEMENT AGREEMENT

The whole truth is that the other seven (7) cases cited by Nationwide do not apply. In three (3) of the cases, the settlement sought to be enforced was in writing.

> ***In Re City Equities Anaheim, Ltd.*, 22 F.3d 954 (9th Cir. 1984)**
> "This case involves a settlement agreement that contained a sublease and a "drop dead clause" [...] Defendant defaulted, and the bankruptcy court enforced the settlement agreement according to its terms."
>
> ***Gavina v. Smith*, 25 Cal.2d 501 (1944)**
> "In this action to quiet title [...] plaintiffs [...] the owners [...] granted to defendant...the option of leasing the property [...]. The option agreement set forth the terms and conditions on which the lease was to be executed. The form of lease was to be the form attached to the option agreement."
>
> ***Speed Shore Corp. v. Denda*, 605 F.2d 469 (9th Cir. 1979)**
> "Plank had discovered that Rudie was manufacturing machined aluminum parts.... When confronted by Plank, Rudie admitted such manufacture and the parties negotiated a settlement agreement which the defendants now contend is a misuse."

In three (3) of the cases, as in *Harrop*, the settlement sought to be enforced was placed on the record in open court and/or approved by the court:

> ***Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002)**
> "The parties came into open court to announce that the parties had agreed to settle the case and to place the terms of the settlement on the record."
>
> ***Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989)**
> "the parties settled the mental health claims and the district court approved the Stipulation Settling Mental Health Claims (Settlement Agreement)..."
>
> ***TNT Marketing, Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986)**
> The fact that the judgment was captioned "Judgment for Conversion of Property" does not obscure the fact clearly reflected in the body of the judgment that the damages were awarded, not for the tort of conversion, but for failure to comply with the consent judgment."

In one (1) of the cases, the settlement sought to be enforced was entered into by a United States Assistant Attorney General.

> **United States v. McInnes, 556 F.2d 436 (9th Cir. 1977)**
> "We find clear authorization in 28 CFR § 0.160 for the Assistant Attorney General to compromise and settle the appellees' claims against the United States."

In none of the cases cited -- wherein the party seeking to enforce the settlement agreement refused to "prepare a [full blown] settlement if the parties haven't settled" after being told it would be a "tremendous help" to a 69-year-old, third grade educated, primarily Spanish speaking signee"[3] -- fit *all of the facts* now before this court.

### 3. CONCLUSION.

Therefore, Champion's Motion to Enforce Settlement should be denied.

Dated: April 19, 2021

**LAW OFFICE OF MICHAEL WADDINGTON**

By: /s/ Michael Waddington
MICHAEL WADDINGTON
Attorney for Plaintiff
JUAN MANUEL GUTIERREZ

---

[3] Nationstar's treatment of Mr. Gutierrez in not providing him with a copy of the settlement agreement before agreeing to settling, and at the same time representing that it will have to approve the language in the settlement agreement before signing off, is indicative of how Nationstar has treated Mr. Gutierrez throughout their entire relationship.